### F. D. CUMMER & SONS CO. v. MARINE SUGAR CO.

(Circuit Court of Appeals, Sixth Circuit. June 16, 1906.)

No. 1,500.

SALES—CONSTRUCTION OF CONTRACT—WARRANTY.

A contract for the manufacture and delivery of a dryer for drying beet pulp contained the following provisions: "Guaranties: We will guaranty the·dryer * * * to develop under test an easy capacity for evaporating not less than 6.000 pounds of moisture hourly from your pressed beet pulp; guaranty based on the pulp when delivered to the dryer carrying about 80 per cent. of moisture, and to be thoroughly disintegrated. We further guaranty that the dried pulp ·will be dried thoroughly and evenly to 10 per cent, or less of moisture, and without injury to flavor or color. We also guaranty an evaporation of about ten pounds of moisture to the pound of combustible consumed. * * *" *Held*, that the condition that the beet pulp delivered to the dryer should carry about 80 per cent. of moisture and be thoroughly disintegrated applied to all three of the guaranties, and not merely to the one which preceded it, and that where the dryer was never tested nor used under such condition the buyer could not allege a breach of the second guaranty in defense to an action for the purchase price.

In. Error to the Circuit Court of the United States for the Eastern District of Michigan.

S. T. Douglas and George B. Perry, for plaintiff in error.
A. C. Dustin and Horace Andrews, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was an action on a contract for the ·manufacture and delivery by the plaintiff in error (plaintiff below) to the defendant in error, of a dryer for drying beet pulp. The suit was for the balance of the purchase price, and the defense that the dryer did not comply with the second guaranty of the contract, a copy of which is given below. The case went to the jury upon a charge·giving to this guaranty an interpretation to which the plaintiff excepted, and resulted in a verdict for the defendant. There are many assignments in error, but the case turns upon the construction of the contract in the particular mentioned.

1. The contract involved is contained in the following proposal and acceptance: ·

"Cleveland, Ohio, June 26th, 1900.

"Marine Sugar Company, Marine City, Mich.—Dear Sirs: We submit the following proposal for your consideration, and, we trust, acceptance:

"Price: For the sum of $6,425.00, we will furnish to you the ironwork complete for one Cummer patent dryer, to be equipped with Cummer patent mechanical stoker for burning slack bituminous coal, also Lee patented dust collector.

"Delivery: To be made F. O. B. cars Cleveland in about seventy-five days from date of receipt of your acceptance of this proposition, barring delays beyond our control.

"Plans: In about two weeks from date of receipt of your acceptance of this proposition, we will furnish a complete set of plans for the setting of the dryer.

"Guaranties: We will guaranty the dryer, when erected and operated according to our plans and instructions, to develop under test an easy capacity for evaporating not less than 6,000 pounds of moisture hourly from your pressed beet pulp; guaranty based on the pulp when delivered to the dryer carrying about 80 per cent. of moisture and to be thoroughly disintegrated. We further guaranty that the dried pulp will be dried thoroughly and evenly to 10 per cent. or less of moisture, and without injury to flavor or color. We also guaranty an evaporation of about ten pounds of moisture to the pound of combustible consumed on the bars of the stoker; slack bituminous coal of good quality to be the fuel used.

"Expert Man: We will furnish the services of an expert man to superintend and assist in the erecting, starting, and testing of the dryer. We will furnish such a man at the rate of $5.00 per day, plus his board and expenses from the time he leaves Cleveland until his return thereto, payable to man direct weekly by you.

"Failure of Guaranties: Should fair and proper trials made within five months from date of shipment of the dryer demonstrate that the dryer is incapable of fulfilling the guaranties, you will be at liberty to load the dryer and appurtenances as furnished by us on cars at your place, subject to our order, when we will refund to you what you have paid to us on account of this contract, reimburse you for the actual amount expended by you in erecting the dryer in masonry, and neither party shall have any further claim on the other.

"Terms of Payment: $1,000.00 to be paid in cash along with your acceptance of this proposition; $3,425.00 in cash upon shipment of the dryer; $2,000.00 in cash as soon as dryer has been tested and the guaranties fulfilled; but in no event is payment of the last $2,000.00 to be deferred longer than five months from date of shipment of the dryer.

"Mutual: There are no conditions applying to this contract other than those expressed herein.

"Respectfully submitted,                    W. M. Cummer, President."

"The F. D. Cummer & Son Co., Cleveland—Dear Sirs: We accept your proposition as written above, and agree to fulfill our part. We hand you herewith our check for $1,000, same being first payment on account of this contract.

"Yours truly,                    Marine Sugar Company."

Upon the acceptance of the proposal, the defendant paid the $1,000 stipulated in the contract, but made no further payment. It refused to pay the $3,425 stipulated to be paid upon the shipment of the dryer, because it desired to test the machine before making further payments. Thereupon the plaintiff brought suit to recover the second payment. No test of the dryer had been made prior to the time the suit was brought. Subsequently, preparations for a test were made, but the plaintiff declined to proceed with the test after a preliminary analysis of the pressed beet pulp showed that it contained 92 or 93 per cent. of moisture instead of the 80 per cent. mentioned in the con-

146 F.—16

tract as the basis of the guaranty or guaranties. This brings us to the construction of these guaranties.

It will be observed that the contract contains three guaranties respecting the operation of the dryer—the first as to the total capacity of the dryer for evaporation per hour; the second as to the quality of the product; the third as to the capacity for evaporation to the pound of coal consumed. The first guaranty is expressly based upon the condition that the pressed beet pulp, when delivered to the dryer, should carry about 80 per cent. of moisture, and be thoroughly disintegrated. The court, during the trial and in its charge, limited this condition to the first guaranty, and respecting the second guaranty, upon which the controversy hinged—the question submitted to the jury being whether the quality of the dried pulp produced complied with this guaranty—said:

"As the court has construed this guaranty in the course of the trial, it is independent of the undertaking on the part of the defendant that the pulp should contain a specific amount of moisture."

It is conceded that the "pressed beet pulp" delivered to the dryer carried between 92 and 93 per cent. of moisture. The court below held that this made no difference; that, under the second guaranty, the product of such pulp must be "dried thoroughly and evenly to 10 per cent. or less of moisture, and without injury to flavor or color," regardless of the fact that the material when placed in the dryer carried about 13 per cent. more of moisture than that stipulated in the contract at the conclusion of the first guaranty.

We think the court erred in so construing the second guaranty. It appears from the testimony that the sugar company was just entering upon the business of producing beet sugar, and the Cummer Company was making its first dryer for beet pulp. Both were new to the business. Both took risks in thus entering an untried field. Each had a right, and it was the part of prudence, under such circumstances, to define its obligations and limit its risks, and this was done in the contract under consideration. The proposal at its close containing the following explicit provision: "Mutual: There are no conditions applying to this contract other than those expressed therein." This, along with the other provisions of the contract, was accepted by the sugar company, and should have been treated by it as notice that a strict compliance with the terms of the contract would be insisted upon by the Cummer Company.

The fact, to which we have alluded, that the field was a new one, appears in the provisions respecting the "failure of guaranties," limiting the liability of the parties. This provides that should proper trials made within five months from the shipment of the dryer demonstrate that it was incapable of fulfilling the guaranties, the buyer would be at liberty to return the same, when the seller would refund the amount paid, reimburse the buyer for the actual amount expended in erecting the dryer, and neither party should have any further claim on the other. The contract, as we read it, was an entirety, and the three guaranties were each based upon the same con-

dition, that condition being that the beet pulp delivered to the dryer should carry about 80 per cent. of moisture, and be thoroughly disintegrated. It is true that this condition is found at the end of the first guaranty, but that is where it belonged. The first guaranty applies to the process of evaporation, the second to the result, the third to the cost in coal. The raw material is properly conditioned in the first. Here it is designated as "pressed beet pulp," and it is stated that the guaranty is based on such pulp when delivered to the dryer, carrying about 80 per cent. of moisture. The second guaranty treats of the "dried pulp." This "dried pulp" is plainly the result of the evaporation described in the first guaranty. It is the pulp dried from "the pressed beet pulp," mentioned in the first guaranty, carrying about 80 per cent. of moisture. The same thing is true of the third guaranty, although it does not appear to be involved in the case. In short, the plaintiff, in designing the dryer, figured upon the pressed beet pulp delivered to the dryer carrying about 80 per cent. of moisture. It matters not why it did so, or whether it was correct in doing so. If both the Cummer Company and the sugar company were mistaken in the belief that the Cummer Company could produce "pressed beet pulp" carrying only 80 per cent. of moisture, that would not alter the contract, and change it to one based upon the delivery of pressed beet pulp containing 93 per cent. of moisture.

The proposal of the Cummer Company when accepted limited its liability to a failure to produce a successful dryer for pressed beet pulp carrying about 80 per cent. of moisture, and if no such pulp was delivered to the dryer, and it failed, under the second guaranty, only with beet pulp containing 93 per cent. of moisture, it had a right to insist that, in the absence of a failure of the dryer when tested with beet pulp carrying only 80 per cent. of moisture, it must be held to have complied with the contract, and the sugar company was bound to retain the dryer and pay the purchase price.

For the reasons stated, without considering other assignments of error, we have reached the conclusion that the judgment of the court below must be reversed, and the case remanded for a new trial.